UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:11-CV-00460-TBR

N.K.M., *by his parents and next friends*　　　　　　　　　　　　　　　Plaintiffs
KEITH MANNING *and* LANA MANNING, *et al.*

v.

NORTON HOSPITALS, INC., *d/b/a*　　　　　　　　　　　　　　　　　　　Defendants
KOSAIR CHILDRENS HOSPITAL, *et al.*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant University Medical Center, Inc., d/b/a University of Louisville Hospital's Motion for Summary Judgment, which was filed on November 1, 2013. (Docket No. 105.) By Order of November 22, 2013, the Court granted Plaintiffs' motion for an extension of time to respond to Defendant's instant Motion for Summary Judgment and allowed Plaintiffs ten days from the completion of their Rule 30(b)(6) deposition in which to file their response to Defendant's Motion. (Docket No. 108.) Plaintiffs' Rule 30(b)(6) depositions were conducted on several dates in early December 2013 and, based on the Court's review of the record, concluded on December 17, 2013. (*See* Docket Nos. 110; 111; 113.) Plaintiffs have not responded to Defendant's instant Motion, and the time to do so now has passed. Accordingly, this matter is ripe for adjudication. For the reasons that follow, Defendant's Motion for Summary Judgment will be GRANTED.

## BACKGROUND

This medical malpractice action arises out of the care and treatment provided to N.K.M., a minor, at Norton Kosair Children's Hospital (Kosair). Plaintiffs filed their original Complaint in this Court on August 16, 2011, against Kosair, Norton Neurological Institute of Kentucky, and Dr. Thomas Moriarty. (Docket No. 1.) On February 20, 2013, Plaintiffs filed their Third Amended Complaint naming as additional Defendants University Medical Center, Inc., d/b/a University of Louisville Hospital (UMC) and Drs. Amy Hardin, Alekh Gupta, and Emily Tan. (Docket No. 55.) Plaintiffs alleged that UMC was the employer of Drs. Hardin, Gupta, and Tan, and that these doctors were rendering medical diagnosis and treatment of N.K.M. within the scope of their employment with UMC. (Docket No. 55, at 3.) Plaintiffs further alleged that UMC and Drs. Hardin, Gupta, and Tan were negligent in failing to timely diagnose N.K.M.'s kidney disease in June 2009. (Docket No. 55, at 7-9.)

UMC now moves for summary judgment arguing that N.K.M. was at no time a patient of UMC and, therefore, did not receive any medical care at UMC. (Docket No. 105-1, at 2.) UMC also argues that summary judgment is appropriate as to Plaintiffs' respondeat superior claims because UMC did not employ any of the physician Defendants in this action. (Docket No. 105-1, at 2.)

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine

issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Finally, while the substantive law of Kentucky is applicable here pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 70 (2010).

DISCUSSION

A claim for medical malpractice in Kentucky requires a plaintiff to prove the same basic elements as in any negligence claim: duty, breach, and consequent injury. *See Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 687 (Ky. 2003). "Duty, the first element, presents a question of law." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003) (citing *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992)). "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. Ct. App. 2007) (quoting *Ashcraft v. Peoples Liberty Bank & Trust Co.*, 724 S.W.2d 228, 229 (Ky. Ct. App. 1986)). A hospital's duty to a patient arises when it agrees to treat a patient and, in doing so, thereby establishes a doctor-patient relationship. *See id.* (referencing *Noble v. Sartori*, 799 S.W.2d 8, 9 (Ky. 1990)). Absent such a relationship, no duty is owed. *See id.*

The theory of respondeat superior, also called vicarious liability, is founded on the principles of agency and "provides the legal rationale for holding a master responsible for a tort committed by his servant." *Patterson v. Blair*, 172 S.W.3d 361, 363 (Ky. 2005); *see generally Am. Gen. Life & Accident Ins. Co. v. Hall*, 74 S.W.3d 588, 692 (Ky. 2002) (explaining the policy rationale for the doctrine of respondeat superior). "Under that approach, a principal may be vicariously liable for the actions of its agent only if 'the agent acts for the benefit of the principal within the scope of employment.'" *Taylor v. Colo. State Univ.*, 2012 WL 6115596, at *11 (W.D. Ky. Dec. 10, 2012) (quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir.

1998)). Accordingly, there must be some agency or employment relationship in order to impute one person or entity's liability to another.

As noted above, UMC must have owed Plaintiffs a duty in order for them to prevail on their medical negligence claim. The record does not reflect that N.K.M. was at any time a patient at UMC or that UMC at any time provided any treatment to N.K.M. Because UMC neither agreed to treat nor treated N.K.M., UMC owed N.K.M. no duty. Thus, because no duty was owed, there can be no breach thereof, and, accordingly, no actionable negligence. Furthermore, there is no evidence that UMC at any time employed Drs. Hardin, Tan, and Gupta. (*See* Docket Nos. 124-1; 124-2.) As such, UMC cannot be held vicariously liable for any alleged negligence on the part of these Defendants.

## CONCLUSION

Therefore, having considered UMC's Motion and being otherwise sufficiently advised;

IT IS HEREBY ORDERED that Defendant University Medical Center, Inc., d/b/a University of Louisville Hospital's Motion for Summary Judgment, (Docket No. 105), is GRANTED.

IT IS SO ORDERED.

Date:


cc:    Counsel